**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA** :
**ex rel KENNETH P. BROOKS** :
:
:
**v.** : **CIVIL NO. L-00-1088**
:
:
**LOCKHEED MARTIN CORP., et al.** :
:

**MEMORANDUM**

After the United States declined to intervene in Kenneth P. Brooks's *qui tam* action, his suit was unsealed and served on defendants, who moved to dismiss. The Court granted the motion, but gave plaintiff an opportunity to cure the defects in his complaint. Although the plaintiff has filed a second amended complaint, he fails to remedy the deficiencies in all three of its counts. Count I fails to allege fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Count II alleges a conspiracy between a parent corporation and its wholly-owned subsidiaries, entities that under law cannot conspire with one another. Count III, which alleges retaliatory discharge, is barred by limitations. For the reasons stated herein, the Court will, by separate Order, GRANT the defendants' motion to dismiss.

**I.     BACKGROUND**[1]

    **A.     Defendants' Background**

In 1984, the Department of Energy ("DOE") awarded a wholly-owned subsidiary of Martin Marietta Corporation a contract to operate the Portsmouth Gaseous Diffusion Plant

---

[1] Many of the facts and procedural history recited herein are restated from the Memorandum Opinion on the motion to dismiss the amended complaint, Docket No. 64 (Mar. 22, 2005).

("PORTS"), a uranium enrichment plant in Piketon, Ohio.[2] The corporate parent guaranteed the performance of the subsidiary, Martin Marietta Energy Systems.[3] In 1993, Martin Marietta Corporation formed another wholly-owned subsidiary, Martin Marietta Utility Services, Inc., to perform portions of the contract with DOE.[4]

In October of 1992, Congress created the United States Enrichment Corporation ("USEC") to privatize the government's uranium enrichment program.[5] Effective July 1, 1993, the DOE leased the PORTS plant to USEC.[6] Martin Marietta Corporation and its subsidiaries continued to operate PORTS under the original contract.[7]

On June 19, 1995, Martin Marietta merged with Lockheed Corporation to form Lockheed Martin Corp. Martin Marietta Energy Systems, Inc. merged into Lockheed Martin Energy Systems, Inc. Martin Marietta Utility Services, Inc. merged into Lockheed Martin Utility Services. All three entities (collectively, "Lockheed Martin") continued to perform their contractual duties for USEC at the PORTS plant until July 23, 1998.[8]

**B.    Relator's Background**

According to Kenneth P. Brooks's ("Brooks") complaint, Martin Marietta Energy

---

[2]    Second Am. Compl., Docket No. 70, at ¶ 33 (Apr. 29, 2005).

[3]    Id. at ¶ 33.

[4]    Id. at ¶ 35.

[5]    Id. at ¶ 36.

[6]    Id. at ¶ 38.

[7]    Id. at ¶¶ 37, 39.

[8]    Id. at ¶ 40.

Systems, Inc. hired him in January, 1990.[9]  He worked at PORTS, holding various management positions there.[10]  Brooks's responsibilities included identifying and reporting quality, transportation, environmental, health, and safety concerns to senior management.[11]  Martin Marietta terminated Brooks on June 7, 1994.[12]

### C. Procedural Background

On April 14, 2000, Brooks filed this *qui tam* action to recover damages and penalties for Lockheed Martin's alleged violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA").  On January 30, 2003, after requesting numerous extensions of the deadline, the United States filed its Notice of Election to Decline Intervention.  The Court then unsealed the complaint and ordered Brooks to serve it on Lockheed Martin.  Brooks filed an amended complaint on January 1, 2004, after retaining counsel.  The complaint alleged three counts:  (i) violations of the FCA; (ii) conspiracy to violate the FCA, and (iii) retaliation under the FCA.

On March 2, 2004, Defendants moved to dismiss the amended complaint.  Defendants alleged, *inter alia*, that the amended complaint failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  This Court granted the motion because the amended complaint failed to identify any fraudulent claims that the defendants had submitted, and failed to apprise each defendant of the specific nature of its alleged participation

---

[9]  Id. at ¶ 59.

[10]  Id. at ¶ 59.

[11]  Id. at ¶ 59.

[12]  Id. at ¶ 102.  Brooks did not specify who his employer was at the time of his termination.  Although he alleged that Lockheed Martin was his employer, his termination preceded the Martin Marietta/Lockheed Martin merger that created those entities.  This Court need not address this issue in order to decide the pending motion.

in the fraud. The Court's order pointed out the deficiencies and gave Brooks twenty-one days to correct them by filing a second amended complaint.

On April 12, 2005, Brooks filed a second amended complaint and the defendants promptly moved to dismiss it. Lockheed Martin again contends, *inter alia*, that Brooks's second amended complaint fails to comply with Rule 9(b). The Court agrees.

## II   ANALYSIS

### A.   Count I: False Claims Act

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297, at 590 (2d ed. 1990)). In addition, when a relator raises allegations of fraud against multiple defendants, "the complaint must apprise each defendant of the specific nature of his or her participation in the fraud." In re Newbridge Networks Sec. Litig., 767 F. Supp. 275, 282 (D.D.C. 1991) (citing DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)).

The allegation of a false claim under the FCA is an "averment of fraud" within the application of Rule 9(b). See United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1312 (11th Cir. 2002) ("[a relator's] failure to allege with any specificity if –or when– any actual improper claims were submitted to the Government is indeed fatal . . . ."). Thus, an FCA

relator must satisfy a heightened pleading standard.  The case law clearly states that a complaint that fails to comply with Rule 9(b) must be dismissed.  A relator, therefore, "must come to court with a claim in hand", and cannot rely on "generalized, speculative suppositions" about how a claim might have been submitted.  United States ex rel. Quinn v. Omnicare Inc., 382 F.3d 432, 440 (3d Cir. 2004) (internal citations omitted).

A relator cannot prevail in an FCA *qui tam* action unless his complaint alleges that the defendant presented a false or fraudulent claim to the government.  See Harrison, 176 F.3d at 785 ("[T]he False Claims Act at least requires the presence of a claim– a call upon the government fisc– for liability to attach.")  Liability is based upon the creation or presentation of false claims to the government.  Liability is not based, however, upon the underlying conduct, or the government's wrongful payment.  See, e.g., Horizon West Inc. v. St. Paul Fire and Marine Ins. Co., 214 F. Supp. 2d 1074, 1077 (E.D. Cal. 2002).

This Court dismissed Brooks's amended complaint because it failed to identify a single fraudulent claim that the defendants had submitted to the government.[13]  In its memorandum opinion, the Court observed that the pleading rested on conclusory allegations that the defendants had submitted fraudulent invoices.  As the opinion observed, Brooks had failed to specify (i) the amount of the invoices, (ii) the time period covered by the invoices, (iii) the subject matter of the invoices, or (iv) the persons submitting the invoices.

The Court gave Brooks an opportunity to bring himself into compliance with Rule 9(b).  In his second amended complaint, however, Brooks once again failed to lay out the specifics required by Rule 9(b).  Although Brooks modified his complaint, he did not add any substantive

---

[13]   Mem. Op., at 4.

allegations about the false claims he accuses the defendants of presenting to the government.[14] Although he used slightly different wording, Brooks provided no additional detail. These cosmetic changes are unavailing.

The second amended complaint also lumps all of the defendants together without identifying the person, or even the corporation, making the alleged misrepresentations. In FCA cases, the identities of those making the misrepresentations is crucial to the complaint. See Dealers Supply Co., Inc. v. Cheil Indus., Inc., 348 F. Supp. 2d 579, 589-90 (M.D.N.C. 2004). The defendants in this case cannot determine from the second amended complaint what role each one is alleged to have played in the fraud.[15]

At this point, an FCA suit filed with respect to another Lockheed Martin plant bears mentioning. Lockheed Martin had gaseous diffusion plants in Piketon, Ohio (where Brooks worked) and Paducah, Kentucky. In 1999, the National Resources Defense Counsel brought an

---

[14] For example, Brooks's amended complaint states:
Plaintiff seeks through this action to recover damages and civil penalties arising from false invoices and claims, and any misleading oral or written statements contained in applications, summaries, claims information, cost reports, records and invoices containing numerous itemized claims and credits, oral statements, written statements contained in proposals, and payrolls and all other manner of reports, no matter what description, submitted by Defendants to the United States Government . . . Am. Compl., Docket No. 49, at ¶ 17 (Jan. 20, 2004).

In his second amended complaint, Brooks changed this allegation to:
False Claims Act violations also occurred because Defendants knowingly and intentionally submitted or caused to be submitted to the United States Government invoices or false or fraudulent statements and records for the purpose of obtaining award fees and costs that were not due. Second Am. Compl., at ¶ 16.

[15] Brooks cannot avoid his obligation to identify and provide details about the false claims he alleges by claiming that certain documentation and other information are in the exclusive possession and control of the Defendants. See, e.g., Second Am. Compl., at ¶¶ 116, 163, 232. Although peripheral matters relating to an alleged fraud may be pled "on information and belief" if they are peculiarly within a defendant's knowledge, the fraud itself must be stated with particularity. See First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004).

FCA suit, which is still in discovery, contending that Lockheed Martin had submitted false claims with respect to the Paducah plant. <u>United States ex rel. NRDC v. Lockheed Martin Corp.</u>, 99-CV-00170-M (W.D. Ky. 1999). The Kentucky complaint, which is pending in the United States District Court for the Western District of Kentucky, passed muster under Rule 9(b) because it identified specific false claims that specific individuals had allegedly submitted to the government. In its motion to dismiss, Lockheed Martin demonstrated that Brooks cribbed long passages from the Kentucky complaint. The sections that Brooks cribbed concern general allegations of wrongdoing. He could not copy the allegations regarding specific false claims, because they concerned the Paducah plant only. Brooks's failure, despite the opportunity provided to him, to specify a single false claim centering on the Ohio plant leads to the conclusion that he knows of none.

Because Brooks's second amended complaint does not cure the faults of his amended complaint, Count I must be dismissed.[16]

### B.   Count II: Conspiracy Under the FCA

Section 3729(a)(3) of the FCA provides: "Any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; . . . . is liable to the United States Government. . ." 31 U.S.C. § 3729(a)(3). A parent corporation and its wholly owned

---

[16] Defendants also argue that Brooks's second amended complaint (i) is insufficient under the first-to-file rule and the public disclosure rule, (ii) is barred by res judicata, and (iii) should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the Court finds that Brooks has failed to satisfy the requirements of Rule 9(b), it is not necessary to examine these arguments.

subsidiaries, however, are legally incapable of forming a conspiracy with one another. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984). [17]

All parties agree that Defendants Lockheed Martin Utility Services, Inc. and Lockheed Martin Energy Systems, Inc. are both wholly owned subsidiaries of Defendant Lockheed Martin Corporation. It is not possible, therefore, for the three defendants to have formed a conspiracy. Brooks has not presented any argument why the Copperweld standard, which courts have applied to the conspiracy provisions of other federal statutes, should not apply to the FCA. Accordingly, Brooks' allegation that the defendants conspired among themselves to violate the FCA must fail as a matter of law, and Count II will be dismissed.

### C. Count III: Retaliation Under the FCA

Brooks contends that his employer terminated him for pursuing a *qui tam* case, but his retaliation claim faces several insuperable obstacles. He was terminated in 1994, yet he did not file his *qui tam* suit until 2000, after the limitations period had expired.[18] Furthermore, Brooks

---

[17] "In any conspiracy, two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit . . ." Copperweld, 467 U.S. at 769. In contrast, "a parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." Id. at 770-71. See also Fogie v. Thorn Americas, Inc., 190 F.3d 889, 898 (8th Cir. 1999) (applying Copperweld to hold that a parent and its wholly owned subsidiary lacked the capacity to form a civil conspiracy under the RICO Act).

[18] It appears that Brooks got the idea to file an FCA suit from the Kentucky suit. As discussed above, he cribbed large portions of his complaint from the Kentucky complaint. This borrowing suggests that Brooks's suit was not the result of a plan that he set in train before his termination.
    The Court notes, however, that in 1994, Brooks sued Martin Marietta in the United States District Court for the Southern District of Ohio, alleging retaliation and wrongful discharge in violation of Ohio's general "whistleblower" statute, Ohio Revised Code Ann. § 4113.52. Brooks v. Martin Marietta Utility Servs. Inc., C-2-94-1178 (1994). The suit did not allege violations of the FCA. The court granted summary judgment for the defendants. Id., Docket No. 48 (Aug. 15, 1997). The Sixth Circuit affirmed, and the Supreme Court denied certiorari. 527 U.S. 1054 (1999).

does not allege that he took any steps that could be characterized as "in furtherance of" a *qui tam* action or that defendants ever knew that he contemplated filing a *qui tam* action. His retaliation claim, therefore, fails.

The FCA protects employees who pursue, investigate, or otherwise contribute to an action exposing fraudulent claims to the government.[19] A retaliation claim under § 3730(h) is subject to a statute of limitations. In <u>Graham County Soil & Water Conservation District v. United States ex rel. Wilson</u>, 125 S. Ct. 2444 (2005),[20] *reh'g denied*, 126 S. Ct. 24 (2005), the Supreme Court held that the FCA does not provide a statute of limitations for a retaliation claim,[21] and, therefore, courts should apply the "most closely analogous" state limitations period.[22]

Brooks argues, however, that the proper statute of limitations for his complaint is the six-year period provided for in § 3731(b)(1) of the FCA, despite the holding in <u>Wilson</u>.[23] This

---

[19]   Section 3730(h) provides, in relevant part:
Any employee who is discharged . . . by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole . . . 31 U.S.C. § 3730(h).

[20]   Lockheed Martin brought this case to the Court's attention in its reply brief. Brooks filed a motion for leave to file a surreply to respond regarding this case. (Reply Memorandum, Docket No. 85 at 3 (Jul. 15, 2005)). That motion is hereby GRANTED. The Court has the surreply and considered it in rendering its decision.

[21]   The Court found that the FCA did not expressly provide a limitations period for retaliation claims, after concluding that the six-year limitations period contained in § 3731(b)(1) of the FCA applies only to *qui tam* actions, and not to retaliation claims under § 3730(h). <u>Wilson</u>, 125 S. Ct. at 2450-51.

[22]   In its opinion, the Court supplied a list of the "likely" analogous statutes of limitations for all fifty states. <u>Id</u>. at 2451 n. 3.

[23]   Essentially, he is arguing that this Court should not apply <u>Wilson</u> retroactively.

9

argument must fail. When the Supreme Court applies a rule of federal law to the parties before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Harper v. Virginia Dept. of Tax., 509 U.S. 86, 97 (1993). Accordingly, this Court must apply the Wilson rule to Brooks's complaint because it was pending when Wilson was decided.[24]

No matter which of the possible state limitations periods this Court chooses, Brooks has failed to file his complaint in a timely manner. His employer terminated him on June 7, 1994; he filed the instant suit on April 14, 2000, five years and ten months later. Ohio, the state in which Brooks was employed, sets a four-year limitations period on various tort claims,[25] and also provides for a limitations period of 180 days after the date the employer takes the relevant disciplinary or retaliatory action against a whistleblower.[26] See Wilson, 125 S. Ct. at 2451 n.3. Alternatively, Maryland, where Brooks filed his complaint, applies a three-year limitations period to various civil actions at law.[27] In accordance with Wilson, Brooks's retaliation claim is time-barred.

Even if Brooks had timely filed, his allegations are not sufficient to support a retaliation claim under the FCA. Section 3730(h) provides relief for an employee who is discharged by his

---

[24] This Court notes that the Ninth Circuit reached the same conclusion in United States v. City of Los Angeles, 149 Fed.Appx. 697 (9th Cir. 2005). After the Wilson decision, the Ninth Circuit upheld the district court's dismissal of the plaintiff's FCA retaliation claim based on California's one-year statute of limitations for personal injury actions.

[25] Ohio Revised Code Ann. § 2305.09.

[26] Ohio Revised Code Ann. § 4113.52(D).

[27] Maryland Code, Courts and Judicial Proceedings § 5-101.

employer because of lawful acts "in furtherance of" a *qui tam* action under the FCA. 31 U.S.C. § 3730(h). These protected acts include "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." Id. A *prima facie* case of retaliation under the FCA requires the employee to establish that (i) he took acts in furtherance of a *qui tam* suit under the FCA; (ii) his employer knew of these acts, and (iii) his employer discharged him as a result of these acts. Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 866 (4th Cir. 1999) (citing Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 914 (4th Cir. 1997)). Brooks's second amended complaint fails to allege facts sufficient to state any of these three elements.[28]

As to the first element, courts construe the statutory phrase "acts in furtherance of" to mean that an employee's protected activity must involve "investigating matters that reasonably could lead to a viable False Claims Act case." United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 740 (D.C. Cir. 1998). There must be a "nexus" between the protected actions that the employee takes and exposing fraud or false claims. See id.[29]

Although Brooks asserts broadly that he "reported fraud against the U.S. Government several times,"[30] this assertion is unavailing. Under the FCA, a general allegation of fraud does not suffice; there must be a submission of a false claim. What Brooks asserts does not tie in with

---

[28] Although plaintiffs bringing employment discrimination claims need not "forecast evidence sufficient to prove" the elements of their claims, Iodice v. United States, 289 F.3d 270, 273 (4th Cir. 2002), they are required to allege facts sufficient to state all the elements of their claims. Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Brooks has not met this minimal burden.

[29] The legislative history of the FCA also notes that the employee's protected activity must "be reasonably connected" to the FCA. McKenzie v. BellSouth Telecomm., Inc., 219 F.3d 508, 515-16 (6th Cir. 2000) (citing S. Rep. No. 99-345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300).

[30] Second Am. Compl., at ¶ 287.

the submission of a false claim. Brooks alleges, for example, that he informed a DOE official of his employer's failure to perform quality assurance audits, which he refers to as a "contract requirement."[31] Brooks reported what may have been, at most, the non-performance of a contractual duty by his employer. He does not allege the necessary relationship between this non-performance and a false claim or fraudulent activity.

Brooks also alleges that he reported to the government his employer's order that employees "cancel, shred, delete from all databases all references to the many thousands of OSHA findings [on OSHA violations]."[32] Again, this was not a report relating to fraud or false claims. The reports Brooks made to the government may have been protected activity under some other federal or state whistleblower protection statute,[33] but they do not qualify as such under the FCA.

The conduct he reported was too attenuated from any possible FCA violation for this Court to hold that Brooks made these reports "in furtherance of" an FCA action, as required by § 3730(h). Brooks offers no other actions that he took "in furtherance of" a *qui tam* suit.

Brooks has also not alleged that any of the Defendants knew he was taking steps in furtherance of a *qui tam* action, let alone that they terminated him for taking these steps. Accordingly, Count III is dismissed.

---

[31]  Id. at ¶¶ 250-51.

[32]  Id. at ¶ 270.

[33]  The Court notes, however, that the United States District Court for the Southern District of Ohio granted summary judgment for defendants on Brooks's whistleblower claims. See *supra* n.18.

### III. **CONCLUSION**

For the reasons stated herein, the Court will grant the Defendant's motion to dismiss the and direct the Clerk to close the case.

Dated this 27th day of March, 2006.

　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　Benson Everett Legg
　　　　　　　　　　　　　　　　　　　　Chief Judge